### W. D. SHUP v. J. F. MOON et al.

No. 15,965.

SYLLABUS BY THE COURT.

1. TRUSTS AND TRUSTEES—*Resulting Trust.* Two parties, one as principal and the other as surety, borrowed money at a bank to promote a business transaction in which they were both interested. The money was used to discharge the obligation of a third person, who indemnified the principal with a real-estate mortgage, the principal expressly agreeing with the surety that the proceeds of the mortgage should be used to satisfy their obligation to the bank. It became necessary to realize on the mortgage and the principal placed it in the surety's hands for foreclosure. Suit was brought in the principal's name, a judgment foreclosing the mortgage was duly rendered, at the sheriff's sale the land was bid in for the surety, and in due time a sheriff's deed issued to the surety. The surety entertained no purpose to defraud the principal, and immediately upon receiving the sheriff's deed offered to vest full title in the principal if the principal would satisfy the bank. This the principal refused to do, whereupon the

surety paid the bank. *Held,* the surety was not a mere agent of the principal to foreclose the mortgage, was not compelled by any legal duty to bid or take a conveyance in the name of the principal, committed no fraud in taking title in himself, and any equitable remedy the principal may have to obtain title to the land includes the necessity of doing equity by reimbursing the surety.

2. —— *Same.* The evidence considered and held to support the findings of fact.

Error from Allen district court; OSCAR FOUST, judge. Opinion filed July 3, 1909. Affirmed.

*I. O. Pickering,* for the plaintiff in error.

*Ewing, Gard & Gard,* and *Manford Schoonover,* for the defendants in error.

The opinion of the court was delivered by

BURCH, J.: Shup brought a suit against Moon and Jones for the declaration of a resulting trust in a tract of land, for the conveyance of the legal title to Shup, and for rents and damages. It was charged that Shup gave to Moon for collection, as Shup's agent, a note secured by a mortgage on the land; that Moon assumed the agency, caused the mortgage to be foreclosed, violated instructions to bid in the land for Shup, who advanced the money to pay the costs, took a certificate of sale and sheriff's deed in his own name and conveyed to Jones, who was in collusion with him. The defendants answered, a trial was had, findings of fact were made by a jury and by the court, and judgment was rendered for the defendants. Shup requested findings of fact which were refused, unsuccessfully attacked certain of the findings which were made, vainly disputed the conclusions of law drawn by the court, was denied a new trial, and prosecutes error.

Here is what the court and jury found: Kramer deeded the land in controversy to Shup for a credit of $4000 on a note which Shup held against him. Moon undertook to dispose of the land as Shup's agent, agree-

ing to take for his commission what he could obtain over $4000. Through Moon's efforts the land was traded to Madden, of Polo, Mo., for a stock of merchandise invoicing $5900. Shup and Moon became partners in the stock in the proportion of $4000 to $1900. Afterward the stock was traded for land in Oklahoma taken in Shup's name, and Shup settled with Moon by giving him a note for $1900, with other real estate as security.

The arrangement with Madden was that the stock of goods should be clear. It was mortgaged, however, and Madden could not lift the lien. In order to save the deal, which could not be consummated otherwise, Shup and Moon deemed it best for Shup to undertake to borrow the necessary money in the sum of $1300. Madden agreed if this could be done to secure Shup by a mortgage for the amount on the land. The parties were all in Missouri, where the stock was located. Telephone communication was opened with the Colony Bank, of Colony, Kan., Moon doing the talking for himself and Shup. Application was made for a loan to Shup of $1300, which the bank declined until Moon agreed to guarantee payment of and to become surety for the loan. On the basis of this assurance the cashier placed the money to the credit of Shup and Shup checked it out to discharge the lien on the goods. When Shup returned to Kansas he gave a note to the bank for the money, which was renewed once or twice, when the bank called upon Moon to comply with his agreement, and Moon, pursuant to his promise, signed Shup's note at the bank as surety. Successive renewal notes signed by both parties included accumulated and unpaid interest so that the debt finally rose to $1495.15.

Madden gave Shup a note for the amount of the loan obtained from the Colony Bank, and secured the note by a mortgage to Shup on the land. In the negotiations with Madden the understanding between the parties was that when the Madden note was paid the proceeds should pay the contemplated loan. When the loan was

effected and the Madden note and mortgage were executed they were taken for the express purpose and with the distinct understanding and agreement between Shup and Moon that the proceeds should be applied in liquidation of the 1300-dollar loan from the Colony Bank, which had been procured through Moon's agreement to be surety for it.

Madden did not pay Shup, and Shup did not pay the bank. Shup delivered the Madden paper to Moon for foreclosure. Moon procured counsel, had suit brought in Shup's name, judgment was duly rendered, and the land was sold. A few days before the sale Shup furnished $66.75 to apply on the expenses of suit. Moon had instructed the attorneys in the case to bid in the land in his name, which was done. A certificate of sale issued accordingly, and after the period of redemption expired a sheriff's deed issued to Moon.

Shup was not present at the sale and had no actual knowledge or notice that the bid was made in Moon's name or that the sheriff's deed ran to Moon, but in taking title in his own name Moon had no purpose or intention to cheat or defraud Shup. The sheriff's deed was delivered to Moon on October 4, and he immediately offered to Shup that the latter take the land and the title thereto free of all claim of Moon, provided Shup pay the debt at the bank upon which both were liable. This Shup declined to do. Thereupon Moon paid the bank in full, on October 8 recorded his deed, and on October 15 conveyed to Jones.

Jones gave a stock of goods for the land. The trade was pending before the sheriff's deed issued. Moon had told Shup about it and had even introduced Shup to Jones as the owner of the land. Shup made no objection whatever to the trade. When Jones inquired of him concerning the land he referred Jones to Moon for information, and his conversation and conduct were such as to lead Jones to believe that whatever Moon did was all right with him. When Moon offered to

turn over the land Shup was told that he could complete the trade with Jones, and Jones purchased without fraud or collusion and in good faith.

From the foregoing it is plain that Shup was beaten on the facts. Much undisputed law is cited in the brief to sustain the theory of the case presented by the petition, but it has no bearing on the case presented by the findings. Shup's evidence was all in perfect harmony with the petition, but the court and jury found a different state of facts from the evidence produced by the defendants, so that, if the facts stand as found, the case is closed.

The court has little time to give to disputes of fact arising upon conflicting oral testimony, but one or two matters may be noticed. Following the allegations of the petition the plaintiff's evidence was that two days before the sale he paid Moon $66.75, instructed Moon to attend the sale, bid off the land for him, and pay the costs out of the money furnished; and that Moon accepted and receipted for the money on these conditions and agreed to bid and purchase for Shup. The court was specially requested to find according to this testimony, and refused to do so.

The evidence shows that it was a matter of surprise that Madden allowed the land to sell, but in anticipation of a sale Shup and Moon adjusted between themselves the supposed expense of the suit. It was estimated at $100. Going back to the transaction which gave rise to the note and mortgage, and figuring on the old partnership basis of $4000 to $1900, Shup's share would be about two-thirds, so he furnished $66.75. The actual expense was: costs, $57.40; attorney's fees, $40; total, $97.40, which Moon paid. After seeing the witnesses and hearing all the evidence the trial court apparently did not believe there was any agreement to bid in Shup's name, and this court is not in a position to say the finding requested should have been made.

The plaintiff, however, relies upon the case of *Guern-*

*sey v. Davis,* 67 Kan. 378, the syllabus of which reads
as follows:

"In an action by a principal against his agent for a
breach of duty, an allegation of a specific direction to
the agent is sufficiently established by showing that the
agent's duty in all cases covered the transaction in
suit, and an instruction to the jury hypothesizing a
specific direction in the particular case is warranted by
such evidence."

This is good law, but it applies only in cases of true
agency, and under the findings of fact the court is not
concerned with such a case.

The Madden mortgage was not a mere piece of pri-
vate property belonging personally to Shup. It was
given for the specific purpose of paying the money bor-
rowed from the bank. In equity and by agreement of
the parties it stood as indemnity against Moon's lia-
bility on the note the bank held. Moon's relation to
the mortgage was, to that extent, the same as if it ran
to him instead of to Shup. When the mortgage was de-
livered to Moon for foreclosure he had the right to pro-
ceed as if it had been assigned to him for the purpose
of accomplishing the object for which it was given. He
was in a sense a trustee for both parties, but he was in
no sense exercising a naked agency. Acting in good
faith, Moon brought the foreclosure suit to a conclusion
and carried the fruits to Shup for the purpose of having
them applied as the mutual obligations of the two men
required they should be applied. He was faithful to
his trust. Shup renounced, and Moon paid the bank.
Shup then had no remedy in equity against Moon which
did not involve an offer to do equity by reimbursing
Moon.

The plaintiff argues against the finding that the Mad-
den mortgage was given to protect the bank loan, be-
cause the bank was not a party to the agreement, be-
cause the money was loaned to Shup, and because the
Madden mortgage was given to Shup individually. The
true character of the transaction was established by

abundant evidence. But if the evidence were less clear these are only incidents and forms, which equity penetrates or disregards in order to reach and deal with substance. It is said that the question whether Moon intended to act fraudulently in taking title in his own name was one of law. The question was one of fact, upon which Moon could testify directly. An argument is built up to show that Jones purchased with such notice and knowledge of Shup's rights that he is not entitled to keep the land, but the record contains substantial evidence warranting the finding that Jones was allowed to purchase under circumstances which required Shup to speak at the time if he ever intended to protest.

The conclusions of law drawn by the trial court need not be discussed seriatim. They are substantially correct and lead to the proper judgment. In any event this court is able to apply the law to the facts found.

The judgment of the district court is affirmed.